## In re BURRUS.

(District Court, W. D. Virginia. December 1, 1899.)

**1. BANKRUPTCY—COSTS—FEE OF ATTORNEY OF VOLUNTARY BANKRUPT.**
Bankr. Act 1898, § 64b, cl. 3, giving priority of payment out of bankrupts' estates to "one reasonable attorney's fee to the bankrupt in voluntary cases, as the court may allow," vests solely in the sound discretion of the court the amount to be allowed in the circumstances of each case. There can be no fixed fee for all cases, but the character and condition of the estate, the orders necessary to be secured for its protection, and the corresponding amount of time and attention required of the attorney, are all matters to be considered by the court in determining what is a "reasonable" amount in the circumstances.

**2. SAME.**
Where it appears that the attorney of a voluntary bankrupt, in addition to preparing the petition and schedules, was actively engaged for several days in three different cities in endeavoring to procure injunctions to restrain attaching creditors from selling property of the estate, and that, after the adjudication, he appeared four times before the referee and at creditors' meetings, and had entire charge of the bankrupt's interests, *held* that, in addition to his traveling expenses and actual disbursements, he should be allowed a fee of $200, to be paid out of the estate.

**3. SAME—DISSOLUTION OF LIENS.**
Under Bankr. Act 1898, § 67c, cl. 1, providing for the dissolution of liens obtained in any suit or proceeding begun against a person within four months before the filing of a petition in bankruptcy by or against him, "if it appears that said lien was obtained and permitted while the defendant was insolvent, and that its existence and enforcement will work a preference," it is not necessary to the dissolution of an attachment levied within such time that the creditor should have known, or had reasonable cause to believe, that the debtor was insolvent, nor that the lien should have been sought and permitted in fraud of the act, nor that the debtor should have intended a preference.

**4. SAME—"OBTAINING AND PERMITTING" LIEN.**
Under the above section the attaching creditor "obtains" his lien when proceedings instituted by him result in its attaching to an insolvent's estate in such a manner as to work a preference; and the debtor "permits" it when he allows a state of facts to exist rendering such lien possible, and cannot or does not in good faith resist it.

In Bankruptcy.

Geo. K. Anderson, for bankrupt.
Chas. S. Dice, for creditors.

JACKSON, District Judge. The certificates of evidence by the referee in this case present two points for review, to wit: First, the amount allowed as attorney's fee to George K. Anderson, attor-

ney for the voluntary bankrupt; and, second, whether certain attachment liens obtained upon the property of the bankrupt within four months prior to the filing of the petition are dissolved by the adjudication. It appears from the certificate of evidence before the referee that at the time of the filing of the petition several attachments had been sued out and levied by various creditors of the bankrupt upon certain of his personal property, consisting of a stock of goods, and that the same was about to be sold under said attachments; that the attorney for the bankrupt, George K. Anderson, in addition to preparing the petition and schedules herein, was actively engaged for several days at Lewisburg, Charleston, and Parkersburg, W. Va., in an endeavor to secure injunction and restraining orders against said several attaching creditors from the further proceedings and sale of the bankrupt's property under said attachments; that the bankrupt resided at Clifton Forge, Va., but carried on a mercantile business in Greenbrier county, W. Va.; that said Anderson, as attorney, has also appeared before the referee and at creditors' meetings in Lewisburg four times, and that he has had complete charge of the bankrupt's interest from the inception of the case. By an order of the referee, made on December 19, 1898, said Anderson was allowed the sum of $45.45 for traveling expenses, telegrams, clerk's charges, etc., actually incurred and paid by him in securing the restraining orders mentioned. This sum the trustee was directed by the referee to repay him out of the funds in his hands. For his services rendered and to be rendered the bankrupt in this proceeding he has asked to be allowed, and has duly proven before the referee, $250, to be allowed and paid him out of the estate in the hands of the trustee as a claim having priority under section 64b, cl. 3. The referee, by an order, allowed said attorney, in addition to the sum of $45.45 previously allowed and paid him for expenses incurred, the sum of $100, and rejected his claim in excess thereof.

The only provision of the bankruptcy act regulating the amount to be allowed and paid out of the estate as an attorney's fee in cases of voluntary bankruptcy is found in section 64b, which provides for one "reasonable fee," irrespective of the number of attorneys employed. This section evidently intended to and does vest solely in the sound discretion of the court the amount to be allowed under the circumstances of each case; and the character of the estate, its condition at the time of the adjudication, the injunctions or restraining orders necessary to be secured for its protection, and the corresponding amount of time and care required of the petitioner's attorney, are all matters to be considered by the court in arriving at the amount "reasonable" under the circumstances. Necessarily, therefore, there can be no fixed and determinate fee for all cases, nor will the amount allowed in this case establish a rule for subsequent cases in this court, but from a careful consideration of the evidence certified by the referee herein the court deems $200, in addition to the $45.45 already allowed and paid for expenses incurred, a reasonable fee, and the order of the referee will be modified accordingly.

The remaining point certified for the review by the court is whether certain attachment liens obtained upon the stock of goods of the bankrupt within four months of the filing of the petition herein by H. C. Bare and A. M. Buster are dissolved by the adjudication. Said attachments were sued out and levied upon the stock of goods on July 30, 1898, and the petition was filed September 23, 1898. It clearly appears from the evidence certified that at the time of the suing out of these attachments the bankrupt was insolvent, and it is conceded that their enforcement would work a preference. Upon this state of facts section 67c, cl. 1, is conclusive. It provides that all liens created by or obtained in or pursuant to any suit or proceeding, including an attachment which was begun against a person within four months of the filing of a petition in bankruptcy by or against him, shall be dissolved by the adjudication of such person to be a bankrupt, if "it appears that said lien was obtained and permitted while the defendant was insolvent, and that its existence and enforcement will work a preference." Knowledge of the insolvency, or reasonable cause for belief of the insolvency, is not necessary under this clause, as it is under section 67c, cl. 2, nor for such lien to have been sought and permitted in fraud of the bankruptcy act, as under clause 3. All that is required for such lien to be dissolved is that the suit or proceeding was begun within four months of the filing of the petition, and while the defendant was insolvent, and that its enforcement will work a preference. The intent on the part of the bankrupt to allow a preference to be obtained, or his collusion and participation to that end, is not, by clause 1, a requisite to the ipso facto dissolution of the lien. Unlike the bankruptcy act of 1867, the present act does not require intent to prefer as an element, even under clause 3 of section 3, defining the third act of bankruptcy to be "suffering or permitting, while insolvent, any creditor to obtain a preference," and not causing it to be vacated or discharged at least five days before a sale. Under section 67 the language is, "obtained and permitted," and the creditor "obtains" his lien when proceedings instituted by him result in its attaching to an insolvent's estate in such a manner as to work a preference, and the debtor "permits" it when he allows a state of facts to exist rendering such lien possible, and cannot or does not in good faith resist it. In re Arnold, 1 Nat. Bankr. N. 334, 94 Fed. 1001; In re Collins, 1 Nat. Bankr. N. 290. In the present case it is not necessary to consider section 67f, which seemingly renders all liens obtained within four months prior to the filing the petition null and void upon the adjudication without any of the provisos found in section 67b, further than to note that its apparent inconsistency with the preceding sections has been explained by the interpretation placed upon it by several of the district courts, viz. that it applied only to involuntary cases. It follows from the above that the ruling of the referee that the attachment liens of H. C. Bare and A. M. Buster are dissolved by the adjudication herein is approved and confirmed.