### In re GOLDBERG.

#### (District Court, N. D. New York. March 18, 1903.) .

1. BANKRUPTCY—PROPERTY OF BANKRUPT—ATTACHMENT IN STATE COURT—SALE UNDER ATTACHMENT—BONA FIDE PURCHASER.

Bankr. Act, § 67, subd. "f". (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), declares that all attachments obtained against an insolvent within four months prior to the filing of a petition in bankruptcy against him shall be deemed void if he is adjudged a bankrupt, and the property affected by the attachment released therefrom, provided that nothing shall, impair the title, obtained by such attachment, of a bona fide purchaser for value, who shall have acquired the same without notice or reasonable cause for inquiry. After the filing of a petition in bankruptcy, property of the bankrupt of a value exceeding $500, which had been attached before the petition was filed, was sold to a son of the attachment plaintiff for $50. *Held*, that the purchaser was not bona fide a purchaser for value, without notice, within the proviso, and obtained no title.

This is a motion on the part of Albert Levi for an order to vacate an injunction heretofore granted by this court, which restrains him and others from interfering with the property of said bankrupt, and especially from interfering with or disposing of certain property of said bankrupt sold by the sheriff of Warren county, N. Y., in certain attachment suits brought against said Goldberg, the bankrupt, by Jonathan Levi and Edward F. Cohn shortly before the bankruptcy proceedings were instituted, but which sale took place thereafter, and which attached goods were sold to said Albert Levi.

Ashley & Williams, for the motion.
Walter A. Chambers, opposed.

RAY, District Judge. On or about July 19, 1902, Jonathan Levi and Edward F. Cohn commenced an action in the Supreme Court of the state of New York against said bankrupt, in which one or more warrants of attachment were issued, and by virtue of which the sheriff of Warren county seized certain property then in Goldberg's possession or under his control, and caused an inventory thereof to be made. The value of the property so attached was fixed by the appraisal at the sum of $1,548. The claim of the plaintiffs amounted to the sum of $335.33 and interest from July 10, 1902. August 1, 1902, the county judge of Warren county authorized and directed the sale of a portion of said property, marked "Perishable," which was appraised at more than $500, and a sale thereof was made August 8, 1902. Au-

gust 7, 1902, a petition in bankruptcy was filed against said Harry Daniel Goldberg, and a subpœna was issued, but he had fled the state; and there was long delay in securing service of the subpœna and procuring an adjudication and the appointment of a trustee of the estate of the bankrupt.

It is claimed, and for the purposes of this motion will not be questioned, that notice of the sale was given as required by law. The fact remains, however, that the sale was attended by Albert Levi, a son of one of the plaintiffs in such attachment suits, by the attorney for the plaintiffs therein, and by the officer making the sale, only, and goods inventoried at more than $500, and which were worth that sum, were then and there offered for sale and struck off to said Albert Levi for the sum of $50. Under this alleged sale the purchaser undertook to take possession, and ordered the goods shipped. It is now asserted that prior to the filing of the petition in bankruptcy, but within the four months preceding, however, the bankrupt had made a bill of sale of a portion of these goods to one Mollie White, and that this fact accounts for the small sum bid, and for which the goods sold. This vendee in the bill of sale had not taken possession of the goods, or of any part thereof, nor has she ever asserted any claim or right thereto under such bill of sale, or, if she did, she shortly abandoned such goods and all claim thereto. The evidence shows that it was fraudulent and void both in fact and under the provisions of the bankrupt law. There is some evidence showing collusion, by which the attendance of bidders at the sale was prevented, and some evidence tending to show that much of the property sold to Albert Levi was not perishable or of a perishable nature, and therefore the sale of such part was not authorized by the ex parte order of the county judge.

The Supreme Court, at Special Term, vacated this sale, but the Appellate Division reversed the order and held (see Levi v. Goldberg, 76 App. Div. 210, 78 N. Y. Supp. 367):

"A junior attachment creditor is not entitled to have a sale of a portion of the attached property set aside on the ground that the purchase price was inadequate, where it appears that the remainder of the attached property is more than sufficient to satisfy the claims of both the senior and the junior attachment creditors. An order directing a resale of the property in question should not be granted by the Supreme Court of the state of New York after the United States court, in bankruptcy proceedings against the debtor, has assumed jurisdiction over the debtor's property, and has issued an order restraining all parties from taking any further proceeding in the attachment action, and directing that all things should remain in statu quo. The United States court should not be hampered by orders of a state court touching property over which it has assumed jurisdiction in proceedings in bankruptcy."

And in the opinion said:

"That portion of the order of the federal court restraining all parties from taking any further proceedings in the attachment action, as well as the other provisions of the order providing that all things shall remain in statu quo, seems to have been wholly ignored. That the federal court, in the pending proceedings in bankruptcy, has ample power to determine all matters before the court on the motion for a resale, cannot be doubted. The federal court should not be hampered with orders of a state court touching property over which it has assumed jurisdiction in proceedings in bankruptcy. The order appealed from was therefore, we think, improvidently granted, and should be set aside."

It is claimed on this motion that this court never had jurisdiction to grant the restraining order now sought to be vacated. If this be true, Levi should have appealed from the order to the Circuit Court of Appeals, where the order would undoubtedly have been reversed. The cases cited by the attorney for Albert Levi on this motion have no application whatever. It has been decided by the Supreme Court of the United States that the filing .of a petition in bankruptcy is notice to all the world of the pendency of the proceeding; that same is, in effect, an attachment and injunction. Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 46 L. Ed. 405. Therefore the sheriff making the sale, the plaintiffs in that action, and their attorneys, and the purchaser at the sale, had notice of the pendency of the bankruptcy proceeding. They knew that Goldberg was gone, and they knew that more than $500 worth of the bankrupt's property was offered for sale upon a judgment of less than $350, and they knew that this amount of property was struck off to a son of one of the plaintiffs for the sum of $50, and it now appears that they knew some of the property was not perishable, and that its sale was not authorized. When that transaction comes up in this court in an appropriate manner, it will be the duty of the court to set aside or ignore that pretended sale; and it is the duty of the trustee in bankruptcy to proceed with all diligence and avail himself of all legal measures to obtain possession of that property struck off to Levi, and reduce it to money, and apply it, with other assets, to the payment of all established claims. This court would be derelict in its duty, should it permit the appropriation by these attaching creditors, or by the purchaser at this pretended sale of this portion of the bankrupt's property, in the manner here attempted. To sanction such a transaction in any manner would be to aid in defeating the bankruptcy law.

The petition having been filed before this alleged sale took place, all property of the bankrupt was immediately made subject to the jurisdiction of the court in bankruptcy; and Levi now claims his title under and through the bankrupt, and not under or through the person to whom the bankrupt gave the bill of sale. Again, the lien of attachment was vacated, in point of fact, when the petition in bankruptcy was filed, for, when the adjudication was made and the trustee appointed, the lien of the attachment fell, and the title to the property vested in the trustee, and the vesting of such title related back to the filing of the petition.

Subdivision "f," § 67, of the act of July 1, 1898 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), provides as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary

to carry the purposes of this section into effect: provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

Levi is not within the proviso. He is neither a bona fide purchaser for value, nor did he acquire his pretended title "without notice or reasonable cause for inquiry." He had both notice and reasonable cause for inquiry, and, of course, knew he was purchasing a large and valuable amount of property at a grossly inadequate consideration.

It is not necessary to cite the numerous cases holding that a subsequent adjudication in bankruptcy annuls all attachment levies obtained within the four months prior to the filing of the petition. See In re Kenney (D. C.) 97 Fed. 557, 558; In re Reichman (D. C.) 91 Fed. 624; In re Fellerath (D. C.) 95 Fed. 121; In re Rome Planing Mill (D. C.) 96 Fed. 812; In re Vaughan (D. C.) 97 Fed. 560; In re Higgins (D. C.) 97 Fed. 775; In re Burrus (D. C.) 97 Fed. 926; Bear v. Chase, 40 C. C. A. 182, 99 Fed. 920–925.

In effect, the filing of the petition in bankruptcy, followed by adjudication, which related back to the date of such filing, gave notice of the pendency of the proceeding to the sheriff, the plaintiffs, and their attorney, and to this purchaser, and attached this property in question for the benefit of all the creditors of the bankrupt, and enjoined the sheriff, his deputies, the plaintiffs and their attorney, and all the world, from further proceeding in the state court in the attachment suits. Whoever proceeded thereunder thereafter did so at his peril. Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 46 L. Ed. 405. If the bankruptcy law is to be respected and enforced, it must be carefully and honestly administered according to both its letter and its spirit, when in harmony. The main intent and purpose of the law is to prevent preferences, except as specially given by the act itself, and one of the modes of obtaining a preference especially condemned is by means of attachment proceedings in the state court. No course of procedure would more surely defeat the law and bring it into disrepute than would the granting of an order vacating this injunction, and the consequent dissipation of the assets of the estate now particularly in question.

In Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, Abraham made a general assignment October 29, 1898, to one Davidson, who made an inventory of the property, and forthwith took possession thereof. November 7, 1898, a petition in bankruptcy was filed against Abraham, and December 12, 1898, he was duly adjudged a bankrupt. On or about November 17, 1898, about 10 days after the petition in bankruptcy was filed, Davidson sold the goods assigned to him, at public auction, to Bernheimer, who paid $3,500 therefor, which was less than half the inventoried value. The following is the syllabus of that case:

"A bankrupt, nine days before the filing of a petition in bankruptcy against him, made a general assignment for the benefit of his creditors, which was an act of bankruptcy. After the filing of the petition in bankruptcy, the assignee sold the property. After the adjudication in bankruptcy, and before the appointment of a trustee, the petitioning creditors applied to the District

Court for an order to the marshal to take possession of the property, alleging that this was necessary for the interest of the bankrupt's creditors. The court ordered that the marshal take possession, and that notice be given to the purchaser to appear in ten days and propound his claim to the property, or, failing to do so, be decreed to have no right in it. The purchaser came in, and propounded a claim, stating that he bought the property for cash in good faith of the assignee, submitted his claim to the court, asked for such orders as might be necessary for his protection, and prayed that the creditors be remitted to their claim against the assignee for the price, or the price be ordered to be paid by the assignee into court and paid over to the purchaser, who thereupon offered to rescind the purchase and waive all further claim to the property. *Held*, that the purchaser had no title in the property superior to the bankrupt's estate, and that the equities between him and the creditors should be determined by the District Court, bringing in the assignee if necessary."

If the purchaser at that sale failed to gain title to the property superior to the estate of the bankrupt, it is difficult to see how in the case at bar Levi gained any title superior or equal to that of the bankrupt's estate. Indeed, it is easy to see that Levi obtained no title whatever. Bryan v. Bernheimer, supra, is not cited as a case exactly in point, but it throws much light on the questions here raised.

The motion to vacate the injunction must be, and is, denied.